UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Chavis Laranzo Cox, | ) C/A No. 4:13-125-MGL-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )REPORT AND RECOMMENDATION |
| | ) |
| Anthony Davis; | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |
| | ) |

**I.  PROCEDURAL BACKGROUND**

The Plaintiff, Chavis Cox, filed this action under 42 U.S.C. § 1983[1] on January 14, 2013, alleging violations of his constitutional rights. Plaintiff is housed at Lee Correctional Institution ("LCI"). Defendant[2] filed a motion for summary judgment on December 17, 2013, along with a memorandum, exhibits, and affidavits supporting the motion. (Doc. # 51).  Because the Plaintiff is proceeding pro se, he was advised on or about December 18, 2013, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in the dismissal of his complaint.  (Doc. # 52).  The Plaintiff filed a response on December 27, 2013.  (Doc. #56).[3]

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] Defendants Oberman and Padula were dismissed from this action by court order on May 16, 2013. (Doc. #26).

[3] Plaintiff filed a motion to amend his complaint seeking to change the name of the Defendant from Anthony Davis to Aaron Davis stating that "[s]ince filing of the complaint the

## II.  STANDARD FOR SUMMARY JUDGMENT

As previously stated, the defendants filed a motion for summary judgment.  A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that

---

plaintiff has determined that the name of the Anthony Davis defendant is Aaron Davis. . ." (Doc. # 40). Based on the motion for summary judgment and affidavit, the motion to amend is denied as futile.  See Foman v. Davis, 371 U.S. 178, 182 (1962) ("Absent any dilatory motive, undue cause for delay, repeated failures to cure deficiencies by amendments, futility of amendment, or undue prejudice to the opposing party, leave to amend should be liberally given."); and In re PEC Solutions, Inc. Sec. Litig., 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile.").

one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### III.  DISCUSSION

Chavis Laranzo Cox ("Plaintiff") alleges that his federal constitutional rights were violated in connection with a gassing incident that took place at LCI on November 28, 2011. According to Plaintiff, he was rendered unconscious in his cell as a result of an "anxiety attack," after returning from the shower. Defendant Davis, a corrections officer at LCI, however believed that he was faking and placed him in restraints while continuing to try and wake him. Plaintiff asserts that "his witnesses aided me on what happened after this stage" while Plaintiff remained unresponsive. (Complaint at 3). Plaintiff asserts that Officer Davis sprayed gas toward his face in an effort to try to force him to get up. Plaintiff states that Lt. Davis then had him taken to medical in a wheelchair after which he was placed in a holding cell. Plaintiff requests monetary and punitive damages, that Officer Davis be compelled to resign, and that officers at LCI be placed on canister restrictions.[4]

---

[4] Defendant argues that this action should be dismissed for failure to exhaust administrative remedies. However, Plaintiff attached a copy of a step one grievance dated November 30, 2011, that he submitted which was returned to Plaintiff with a response stating that "A copy of this grievance has been forwarded to the Inmate Grievance Branch for possible review by the Division of Investigations (DOI) due to the allegations made in this grievance . . . " (Doc. #1-1). Defendant did

Defendant filed a motion for summary judgment and submitted an affidavit, a copy of Plaintiff's medical summary, and the SCDC narrative report. Anthony Davis attests that he is an employee of the SCDC and was so employed at all pertinent times relative to this action. (Davis affidavit, Doc. #51-2). On November 28, 2011, Davis received notification from Sgt. Brown that inmate Cox was unresponsive and had not been roused by the officer directing him to rise. (Id.). Cox is an inmate in the Special Management Unit (SMU). (Id.). It is SCDC policy that officers not enter an inmate's cell in the SMU unless he is already restrained. (Id.). Inmates in the SMU are some of the most violent so that extra security precautions are necessary during officer contact. (Id.). Even though Plaintiff appeared to be unresponsive, officers had to make sure he would not attack them if they entered his cell while unrestrained. (Id.). Inmates will fake unresponsiveness to lure officers into their cell and assault them. (Id.). This was foremost in their mind when dealing with Plaintiff. (Id.). They approached the cell where Plaintiff was lying on the floor, and he would not respond to staff members numerous directives. (Id.). Davis and Sgt. Brown entered the cell, placed restraints on the Plaintiff and placed him on the bottom bunk. Plaintiff remained unresponsive. (Id.). They were unable to determine whether or not he was faking or if there was a medical emergency. (Id.). They stepped back and administered some chemical munitions on the cell wall. (Id.). This is a safe means for officers to determine whether or not an inmate is faking loss of consciousness. (Id.). If he is not faking, the gas will have no effect on him. (Id.). If he is faking, he will become responsive and officers can take security precaution. (Id.). Once the gas was administered, Plaintiff began coughing.

---

not submit any affidavits to support the allegations that Plaintiff has failed to exhaust his administrative remedies so that this is all the court has to review. Without more, the court cannot conclude that Plaintiff failed to exhaust his administrative remedies such that his case should be dismissed.

(Id.). Officers entered the cell, placed Plaintiff in a wheelchair and notified medical that they would be bringing him down. (Id.). Plaintiff was examined by Nurse Gwendolyn Stokes and no injuries were found. (Id.). Plaintiff was returned to SMU and placed back into his cell without further incident. (Id.). Davis attached the narrative from the SCDC computer system that details the particulars of the incident. (Id.). Davis avers that at no time did he employ excessive force or any force against the inmate. (Id.). Because chemical munitions were used, Plaintiff was seen by medical staff just as if force had been applied. (Id.). Defendant attached a copy of Plaintiff's medical records of the medical exam he received.

Plaintiff filed a response to the motion for summary judgment and attached a copy of two declarations from other inmates. The first declaration is from inmate Courtney Sease who states that he was housed in the SMU at LCI where he was Plaintiff's cell mate. Sease asserts that on November 28, 2011, Plaintiff was complaining of feeling ill and needing medical attention but his complaints were not taken seriously. Sease avers that upon being escorted back to his cell after taking a shower, Plaintiff passed out on the floor. Sease states that he has witnessed Plaintiff having minor anxiety attacks before that were not severe enough to warrant medical attention. However, Sease states that on the day of this incident, Plaintiff's condition seemed more serious and Supervisor Davis was alerted to look into the matter. Sease asserts that Lieutenant Anthony Davis arrived with a "no-nonsense attitude threatening to use gas munition on my downed cell mate" who was unconscious and could not hear the directives. According to Sease, Lt. Davis ordered Plaintiff to stand on his feet and stop pretending and then pulled gas munition to which Sease pleaded with him not to use the gas on his cell mate but that "Lt. Davis said he had to be 'sure.' Lt. Davis went against my wishes." (Doc. # 56-2).

The second declaration submitted by Plaintiff is from inmate Robbie Collins who states that he was housed in SMU in the room next to Plaintiff and witnessed Plaintiff inform Officer Xavier Burroughs and Officer Dillman that he was not feeling good and needed medical attention. Collins asserts that these officers took Plaintiff from the shower back to his room and Officer Burroughs notified Sgt. Jack Brown of Plaintiff's condition who notified the shift LT. A. Davis. Collins states that when Lt. A. Davis approached the cell he opened the food service flap and called Plaintiff's name who was unresponsive leading Lt. Davis to tell Officer Dillman to open the door. Collins asserts that he heard Lt. Davis call Plaintiff's name a few more times and Plaintiff was still unresponsive and he then heard a burst of chemical munition after which Lt. Davis came out of the room with the can of gas in his hand and told Sgt. Brown to go notify medical quickly. (Doc. # 56-2).

The submitted medical records reveal that on November 28, 2011, Officer Davis called medical stating that "inmate was lying on the floor unresponsive. Says they handcuffed inmate and placed him on bottom bunk, then sprayed gas on the wall and inmate did respond to the gas by coughing. Advised Lt. Davis to bring inmate to medical via wheelchair. Lt. Davis voiced understanding." (Doc. #51-4. P.1). The medical encounter states that Plaintiff presented to medical via a wheelchair, escorted by Lt. Davis and a worker from SMU. The Nurse noted he was in no acute distress, his skin was warm and dry and his respiratory was even and non-labored. "I notify CCC to evaluated this IM as his VS (vital signs) are stable and his condition is also stable and does not require medical care at this time. This IM is obviously being manipulative for some reason." (Id. at p. 2).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a

6

claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." <u>Wilkins</u>, 130 S.Ct. 1175, 1178. <u>See</u> <u>also</u> <u>Hudson v. McMillan</u>, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[5]

Here, the Plaintiff's allegations do not support a claim of excessive force. Plaintiff was placed in restraints pursuant to policy because he was housed in the SMU and it is policy. When Plaintiff was still unresponsive to Davis's directives, Davis sprayed chemical munitions in the cell to determine if Plaintiff was faking or if there was a serious medical emergency. In the inmate's declarations, they each state that they heard Lt. Davis call Plaintiff's name several times but he did not respond. Further, Inmate Sease declared that when he asked Lt. Davis not to use the gas on Plaintiff, Lt. Davis said he had to be "sure." Therefore, the declarations support the affidavit of Lt. Davis in this regard. Plaintiff stated in his complaint that the gas was sprayed "towards my facial area" but the declaration from Sease does not state this fact. Additionally, the medical records do not note any reference that the gas was sprayed in Plaintiff's face or any notations of any effects caused by gas. After the gas was sprayed, Plaintiff was taken to medical which has not be contested. He was found to be stable and in no distress in medical and the nurse noted that he was being manipulative.

The court "must accord due deference to an officer's efforts to restrain [an inmate] when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to

---

[5] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. <u>Wilkins</u>, 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." <u>See</u> <u>Hudson</u>, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. <u>Wilkins</u>, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Id</u>. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. <u>Id.</u>

insubordination in an environment which is already volatile enough.'" Scarbro v. New Hanover County, 374 F. App'x 366, 370 (4th Cir.2010) (unpublished) (quoting Gravson v. Peed, 195 F.3d 692, 697 (4th Cir.1999)). Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff in this instance. Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials. Accordingly, the Defendant should be granted summary judgment on this claim.

**Qualified Immunity**

Defendant denies that any of the alleged conduct or conditions complained of by Plaintiff gives rise to a constitutional violation. However, Defendant asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, he is entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendant is entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to this Defendant.

**Eleventh Amendment Immunity**

The Defendant contends that the Plaintiff's §1983 claims for money damages in his official capacity is barred pursuant to Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendant was/is an employee of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in his official capacity.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).[6]

### IV. CONCLUSION

The Plaintiff has failed to show that the Defendant violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by the Defendant (document #51) for summary

---

[6] Any claims by Plaintiff for injunctive relief should be denied. The issuance of an injunction as requested by the Plaintiff would undermine prison officials' ability to effectively manage prisons and maintain order and discipline. Cf. Taylor v. Freeman, 34 F.3d 266, 269-270 (4th Cir. 1994) (holding preliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances). The public interest weighs in favor of policies which encourage security in prisons. Nicholas v. Ozmint, No. 05-3472, 2006 WL 2711852, * 5 (D.S.C.Sept.20, 2006). The court must give deference to decisions by prison administrators. See Wetzel v. Edwards, 635 F.2d 283, 288 (4th Cir.1980). See also McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise").

judgment be GRANTED IN ITS ENTIRETY and this action dismissed as to all Defendants.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

Respectfully Submitted,

s/Thomas E. Rogers, III

February 28, 2014  
Florence, south Carolina

Thomas E. Rogers, III  
United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**